**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| CARRIAGE HILL MANAGEMENT, LLC, | * | |
| Plaintiff, | * | |
| | | Civil Action No. 8:26-cv-00422-PX |
| v. | * | |
| AUSTIN HARTLEY, *et. al.*, | * | |
| Defendants. | * | |

\*\*\*

<u>**MEMORANDUM OPINION**</u>

Pending in this employment dispute is Defendants Austin Hartley and Parkland LLC (collectively, "Hartley")'s[1] Partial Motion to Dismiss a liability theory included within Plaintiff Carriage Hill ("Carriage Hill")'s breach of contract claim.  ECF No. 4.  The motion is fully briefed, and no hearing is necessary.  *See* D. Md. Loc. R. 105.6.  For the following reasons, the motion is GRANTED as to Count I premised on an unenforceable restrictive covenant.

**I.      Background**

The following Complaint facts are accepted as true and construed most favorably to Carriage Hill as the nonmovant.  Carriage Hill is a consulting firm to a wide array of industries. ECF No. 2 ¶ 7.  On April 18, 2023, Carriage Hill hired Hartley as an independent contractor to assist in several business ventures.  *Id.* ¶ 11.  The parties memorialized their arrangement in an Independent Contractor Agreement (the "ICA") that was subsequently amended.  *Id.* ¶ 12.  The ICA relevant to this case took effect on September 1, 2024, and is incorporated by reference into the Complaint.  ECF No. 2 at 18–28.

Under the ICA, Carriage Hill hired Hartley to perform "advisory services related to buying and selling companies, including originating new business opportunities, pitching and

---

[1] While Hartley was employed with Carriage Hill as an independent contractor, he founded Parkland. *See* ECF No. 2 ¶ 9.  Unless otherwise stated, the Court's reference to Hartley includes Defendant Parkland.

managing engagements and deals, and conducting and updating Carriage Hill research" for a period of five years. ECF No. 2 ¶ 14; *id.* at 18 ¶ 2. Hartley specifically worked on "client engagements" with three property management firms, PropM, Rio, and JWB; an architectural firm in Las Vegas, Ethos3; and two industrial services businesses, ITS and Estvold Oilfield Services ("Estvold"). *Id.* ¶ 14. Hartley also agreed that he would use Carriage Hill "equipment" to do his job, and that he would not disclose confidential client information to "any third party," or use such information for any purpose other than his work for Carriage Hill. *Id.* ¶¶ 16–17. The ICA also established Hartley's commission structure, and incorporated a separate, earlier agreement in which Carriage Hill had advanced Hartley funds to be repaid through his commissions. ECF No. 2 ¶¶ 15, 61, 63–65.

Also, as is customary in such agreements, the ICA planned for the day that Carriage Hill and Hartley would part ways. Central to this decision is Paragraph 11 of the ICA, titled the "Non Solicitation/Competition Clause" ("Paragraph 11"). ECF No. 2 at 24 ¶ 11. As fully discussed below, Paragraph 11 restricted Hartley's ability to solicit Carriage Hill's current and prospective clients while employed with Carriage Hill, and for three years after the ICA expired or the parties ended their business relationship. *Id.* Paragraph 11 also restricted Hartley's engagement in "business activities" that "do or may compete" with Carriage Hill while Hartley was performing under the contract. *Id.*

In October 2025, Hartley announced his intention to cease working with Carriage Hill, and the parties terminated the ICA accordingly. ECF No. 2 ¶ 21. When Hartley did not return certain work product of his, as the ICA required, Carriage Hill launched a forensic investigation of its computers and network, and discovered that Hartley had established several profitable contract agreements for his own use and benefit with companies on Carriage Hill's prospective client list. *Id.* ¶¶ 28–38, 47–49. Carriage Hill also discovered that Hartley had negotiated a separate "consultant agreement" and "success fee" with Estvold. *Id.* ¶¶ 39–42. Hartley also

retained one of Carriage Hill's contractors, BDP Holdings LLC, to work for him using a near identical agreement to the ICA. *Id.* ¶¶ 43–46. Lastly, on his way out the door, Hartley downloaded thousands of Carriage Hill's organizational documents, to include roughly 15,000 items from Carriage Hill's research subscription service which comprised more than half of Carriage Hill's yearly download limit. *Id.* ¶¶ 54–56.

Hartley now moves to dismiss Count I, the breach of contract claim, premised on Paragraph 11 because it is overbroad and thus unenforceable. ECF No. 4. For the reasons discussed below, the Court will grant the motion.

## II.    Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). The Court "accept[s] the factual allegations in the complaint as true and construe[s] them in the light most favorable to the nonmoving party." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018). However, the "Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Nor can courts "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see Iqbal*, 556 U.S. at 663 (". . . the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court considers the ICA, which is attached to and made part of the Complaint as integral to the claims. ECF No. 2 at 18–28; *Zak v. Chelsea Therapeutics, Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)).

### III.   Analysis

Hartley singularly contends that any breach claim depending on Paragraph 11 must fail because the provision is "breathtakingly" overbroad and thus unenforceable.  ECF No. 4-1 at 8–9.  In Maryland, a restrictive employment covenant is enforceable if it meets four well known elements: the covenant (1) must cover the employer's legally protected interest, (2) must be no wider in scope and duration than is reasonably necessary to protect that interest, (3) cannot impose an undue hardship on the employee, and (4) cannot violate public policy. *Seneca One Fin., Inc. v. Bloshuk*, 214 F. Supp. 3d 457, 461 (D. Md. 2016).[2]  The Court interprets the covenant based on the plain meaning of its terms and as situated in the context of the ICA as a whole.  *Weichert Co. of Maryland v. Faust*, 19 A.3d 393, 400 (Md. 2011) (internal citation omitted).

Paragraph 11 reads in its entirety:

> You [Hartley] agree that during the Term of this Agreement and for a period of three (3) years following the termination or expiration of this Agreement, You shall not make any solicitation of Company [Carriage Hill] clients or prospective clients or to employ the Company's personnel without written consent of the Company, to be given or withheld in the Company's sole discretion. During the Term You may be engaged or employed in any other business, trade, profession, education or other activity which does not place You in a conflict of interest with the Company; provided that, during the Term (except as otherwise agreed to in writing by the parties hereto) and with no restriction following Termination, You shall not be engaged in any business activities that do or may compete with the business of the Company without the Company's prior written consent, to be given or withheld in its sole discretion.

ECF No. 2 at 24 ¶ 11.

---

[2] Carriage Hill engaged Hartley as an independent contractor, not an employee.  ECF No. 4-1 at 19; ECF No. 2 ¶ 11.  The parties, however, seem to agree that the law concerning the enforceability of the clause makes no distinction as between employee and independent contractor agreements.  ECF No. 4-1 at 7; ECF No. 9 at 3.  The Court also sees no material difference, and so it applies that law here.  *See also Ag Spectrum Co. v. Elder*, 191 F. Supp. 3d 966, 972 (S.D. Iowa 2016) ("Upon a review of Iowa law and the law of other jurisdictions that have considered the enforceability of non-compete agreements involving independent contractors, the Court . . .  need not depart from the usual method for determining enforceability of restrictive covenants in this case.").

Hartley challenges both the non-compete and non-solicitation provisions in Paragraph 11. The Court assesses the enforceability of each separately, starting with the non-solicitation provision.

### a. Non-Solicitation Provision

Turning first to whether the provision covers a "legally protected interest," the "first step in the analysis . . . is to identify the protected interest the covenants are designed to safeguard." *Bindagraphics, Inc. v. Fox Grp., Inc.*, 377 F. Supp. 3d 565, 571 (D. Md. 2019). It is well settled that an employer maintains a "protectable interest in preventing an employee from using the contacts established during employment to pirate the employer's customers." *Holloway v. Faw, Casson & Co.*, 572 A.2d 510, 515 (Md. 1990). Where the employer compensates the employee for "the creation of the good will of customers and clients which is likely to follow the person of the former employee," then the employer is entitled to protect such an interest via a restrictive covenant. *Id.* (quoting *Silver v. Goldberger*, 188 A.2d 155, 158 (Md. 1963)) (footnote omitted)). *See also Seneca One*, 214 F. Supp. 3d at 461 (citations omitted).

Hartley does not dispute this standard. Rather, he attacks the second prong of the restrictive covenant test, whether the non-solicitation provision is "no wider in scope and duration" necessary to protect such "goodwill." ECF No. 4-1 at 8–9. *See Seneca One*, 214 F. Supp. 3d at 461. Because the provision plainly prohibits solicitation of *all* current *and* prospective clients, says Hartley, it is facially overbroad and cannot be enforced. ECF No. 4-1 at 8–9. *Cf. Bindagraphics, Inc. v. Fox Group, Inc.*, 377 F. Supp. 3d 565, 571 (D. Md. 2019) ("A restrictive covenant that is not facially overbroad can still be overbroad as applied to the employee at hand."). The Court agrees.

The provision plainly prohibits "*any* solicitation" of any current or prospective clients. ECF No. 2 at 24 ¶ 11 (emphasis added). No other part of the ICA explains what is meant by

5

"solicitation," or otherwise defines the terms "current" or "prospective" clients. *Id.* "Prospective" without limitation, means "likely, expected or potential." *Prospective*, DICTIONARY.COM, https://dictionary.com/browse/prospective (last visited June 22, 2026). *See also Blue Ridge Risk Partners, LLC v. Willem*, 724 F. Supp. 3d 398, 407 (D. Md. 2024); *Paul v. ImpactOffice LLC*, Civ. No. TDC-16-2686, 2017 WL 2462492, at *6 (D. Md. 2017) ("A prospective customer, under the plain meaning of the term, has not previously done business with Impact and thus would not have been the subject of customer goodwill generated by a former Impact sales representative."). When fairly read, therefore, the provision "would prohibit [Hartley] from working in any capacity" with or for any client that potentially may become one of Carriage Hill's clients, even if outside the scope of the cadre of clients for which Hartley had been hired to advance Carriage Hill's business. *Bindagraphics*, 377 F. Supp. 3d at 572. This alone renders the provision broader than necessary to preserve the goodwill that Hartley may have developed on behalf of Carriage Hill. *See Blue Ridge*, 724 F. Supp. 3d at 407–08 (non-solicitation provision overbroad because not limited to clients with whom employee worked, "or those that had a competitive business relationship with the company"); *Seneca One*, 214 F. Supp. 3d at 461 (non-solicitation provision overbroad where definition of covered "'[c]ustomers' is breathtaking in scope."). *But cf. Allegis Grp., Inc. v. Jordan*, Civ. No. GLR-12-2535, 2014 WL 2612604, at *8 (D. Md. June 10, 2014), *aff'd*, 951 F.3d 203 (4th Cir. 2020) (finding covenant reasonably tied to employer's legitimate interest because it "only applie[d] to business relationships that would be competitive with the specific aspects of 'AEROTEK's Business' that [the employee] supported."). Because the provision restrains Hartley far beyond that which is necessary to protect Carriage Hill's generated goodwill, it is unenforceable.

Carriage Hill, in response, urges the Court to consider that, unlike in the commercial sales context, merger and acquisition advisors like Hartley generally build goodwill with

6

prospects slowly, and well before client retention.  ECF No. 9 at 5.  Thus, asserts Carriage Hill, the term "prospective client" must be read narrowly, covering only those entities that Hartley solicited but who had not yet become Carriage Hill clients.  *Id.*

But that is not what the ICA *says*.  The Court must, first and foremost, consider the plain and unambiguous meaning of the contract terms to ascertain whether the non-solicitation provision is facially overbroad.  *See Medispec, Ltd. v. Chouinard*, 133 F. Supp. 3d 771, 774 (D. Md. 2015).  If it the provision is sufficiently defined, *then* the Court next considers whether the provision is overbroad as applied.  *See Deutsche Post Glob. Mail, Ltd. v. Conrad*, 116 F. App'x 435, 438 (4th Cir. 2004) (citing *Becker v. Bailey*, 99 A.2d 835 (Md. 1973)).  *See also Bindagraphics*, 377 F. Supp. 3d at 571.  Carriage Hill's analysis, however, gets this backward in that it attempts to confine the terms of the provision not from the contract's plain language, but based on the circumstances of its relationship with Hartley.  Indeed, had Carriage Hill meant to confine the term "prospective client" as it contends now, it was free to write the provision accordingly.  It did not.  Thus, the Court concludes the provision is facially overbroad.  *See, e.g.*, *Blue Ridge*, 724 F. Supp. 3d at 409; *Fowler v. Printers II, Inc.*, 598 A.2d 794 (Md. Ct. Spec. App. 1991).  This alone ends the analysis in Hartley's favor.  *Bindagraphics*, 377 F. Supp. 3d at 573.

That is, unless the defects may be cured by "blue penciling," or "crossing out a few words with a blue pencil."  *Fowler*, 598 A.2d at 800 (quoting *Holloway v. Faw Casson & Co.*, 552 A.2d 1311 (Md. Spec. App. 1989), *aff'd in part, rev'd in part*, 572 A.2d 510 (Md. 1990)).  Carriage Hill argues that if the Court excises the phrases "for a period of three years" and "prospective clients," the overbreadth problem would be solved.  ECF No. 9 at 8.  But a court cannot blue pencil "dominant language or words from a single-sentence restrictive covenant, leaving only a narrower example of the original broader restriction."  *Blue Ridge*, 724 F. Supp. 3d at 408 (quoting *Deutsche Post*, 116 F. App'x at 440).  Nor can it blue pencil a provision that

7

is not "neatly severable." *Bindagraphics*, 377 F. Supp. 3d at 574 (quoting *Deutsche Post*, 116 Fed App'x at 439). If the provision amounts to a single indivisible promise, then the promise cannot be altered by excision. *Holloway,* 522 A.2d at 1326–27.

That is this. The offending provision prohibits "any solicitation of Company clients or prospective clients." ECF No. 2 at 24 ¶ 11. This constitutes a single promise not otherwise neatly severable. Moreover, were the Court to strike "prospective clients" it would not cure the lack of definition, and thus overbreadth, as to the term "clients." And if the Court severs the entire non-solicitation provision from the remaining paragraphs, then so too goes the claim premised on the alleged breach of this provision. Thus, blue penciling will not cure the facial overbreadth of the non-solicitation provision. Accordingly, the breach of contract claim that depends on this provision must be dismissed.

### b. Non-Compete Provision

Turning next to the non-compete provision, it reads,

During the Term You may be engaged or employed in any other business, trade, profession, education or other activity which does not place You *in a conflict of interest* with the Company; provided, that, during the Term (except as otherwise agreed to in writing by the parties hereto) and with no restriction following Termination, *You shall not be engaged in any business activities that do or may compete with the business of the Company* without the Company's prior written consent, to be given or withheld in its sole discretion.

ECF No. 2 at 24 ¶ 11 (emphasis added).

The non-compete provision, too, is facially overbroad. Like the non-solicitation provision, the non-compete clause fails to define what is meant by "conflict of interest" such that Hartley could understand what conduct may or may not run afoul of the restriction. ECF No. 2 at 24 ¶ 11. Likewise, a restrictive covenant that prohibits engagement in nonspecific "business activities" that "*do or may* compete with the business of" Carriage Hill sweeps within it speculative potential competition, arguably covering anything Hartley would do in the consulting field that touches upon the same business as Carriage Hill. *Id.* (emphasis added).

In this respect, the Court finds the Fourth Circuit's unpublished decision in *Deutsche Post Global Mail, Ltd., v. Conrad* instructive. 116 Fed. App'x 435 (4th Cir. 2004). There, the court held a restrictive covenant which prohibited engagement in "*any* activity which *may* affect adversely the interests of the Company" was fatally overbroad. *Id*. at 438 (emphasis in original). The court reasoned that the plain language prohibited *all* competition, not just that which would erode the company's goodwill with its customers. *Id.* at 438–39. Similarly, here, the non-compete provision has no clearly defined bounds, as it would prohibit Hartley from "engag[ing]" in *any* undefined "business activities" that *may* compete with Carriage Hill. ECF No. 2 at 24 ¶ 11. It goes well beyond that which is reasonably aimed at protecting Carriage Hill's goodwill with its clients. Thus, the provision is unenforceable. *See MCS Services, Inc. v. Jones*, Civ. No. WMN-10-1042, 2010 WL 3895380, at *3 (D. Md. Oct. 1, 2010); *Bindagraphics*, 377 F. Supp. 3d at 573.

Nor can blue penciling cure the defect. ECF No. 9 at 9. *See Blue Ridge*, 724 F. Supp. 3d at 408. This is principally because the provision itself is so nonspecific and overbroad that to earnestly cure the defects would require rewriting the provision, not just striking select terms. For example, were the Court to excise, as Carriage Hill suggests, the word "may,"[3] the provision would still suffer from inescapable overbreadth because the terms "business activities" which "compete" with Carriage Hill are still so nonspecific as to arguably cover a broader swath of conduct well beyond what is necessary to preserve Carriage Hill's goodwill with its clients. *Cf.*, *Paul v. ImpactOffice LLC*, Civ. No. 16-2686, 2017 WL 2462492 (D. Md. June 6, 2017). Nor is the provision "neatly severable." *Deutsche Post*, 116 F. App'x at 439 (contrasting a promise not to engage in adverse activity with two separate promises not to

---

[3] Carriage Hill asks the Court to strike the phrase "may compete." ECF No. 9 at 9. Striking the word "compete," however, would render the clause unintelligible. So, the Court assumes Carriage Hill is asking to strike only the word "may."

engage in adverse activity and not to divert plaintiff's customers).  Thus, the non-compete provision is overbroad and unenforceable.

**IV.     Conclusion**

For the foregoing reasons, the breach of contract claims in Count I premised on alleged violation of Paragraph 11 are dismissed with prejudice.  Within fourteen days from the date of this Opinion and Order, Defendants Austin Hartley and Parkland, LLC are directed to answer the Complaint.

A separate Order follows.

Date:   June 25, 2026                                              /s/
                                                                   PAULA XINIS
                                                                   United States District Judge